**UNITED STATES of America,**
**Plaintiff,**

v.

**Stanley Lincoln HONOMICHL, also known as Stanley Lincoln Honomicle and Roy T. West, Defendant.**

**Cr. No. 92.**

United States District Court
D. Montana,
Billings Division.

July 2, 1959.

Krest Cyr, U. S. Atty., Butte, Mont., Waldo N. Spangelo, Asst. U. S. Atty., Billings, Mont., for the United States.

John J. Cavan, Jr., Billings, Mont., for defendant.

JAMESON, District Judge.

The United States seeks a warrant of removal to the District of Wyoming, pursuant to Rule 40 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The prosecution is by complaint before a United States Commissioner in Wyoming, and hearing was held before this court to determine whether there is probable cause to believe the defendant guilty of the offense charged.

Defendant is charged with sending two threatening letters through the mails in Wyoming to one Erma West, in violation of Title 18 U.S.C.A. § 876, which provides in part:

"Whoever knowingly deposits in any post office * * * any communication * * * addressed to

any other person, and containing * * * any threat to injure the person of the addressee or of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

The pertinent part of the first letter is as follows: "Erma If you don't call me by thursday (the 19) morning I am going to call your mother up at schmidt mill Greer Idaho and I am going to tell her the same thing about Barb that I told you. * * * I bet your mother will really worry when I tell her that on the phone. and every time I get a hundred miles closer I'll call her up and tell her I am coming. * * * I am going to tell your mother its all your falt, that what's going to happen cause you're the blame of it all." The second letter included the following: "I suppose you still won't give me one another chance, honey, you better think it over because after it's over then it will be to late to do anything but maybe that's the way you want things, but when it's all over with in Idaho then you're going to cry about it, but it will be to late. * * * Going to call your mom and call Barb at the school house on the phone. I guess you no what I am going to tell them. I'll wait untill the 21st April."

The addressee of the letters testified that "Barb" was her ten year old sister, and that the defendant had stated during the course of an argument with the addressee that "he would leave and get even with me through Barbara, that he would rape and kill her if he had to."

The defendant contends that the letters in themselves do not contain "a threat to injure the person of the addressee or another," and that reference may not be made to other statements of the defendant to show the meaning of the language used in the letter.

In United States v. Prochaska, 7 Cir., 1955, 222 F.2d 1, 2, the court construed another paragraph of § 876, providing in part that, "whoever, with intent to extort from any person any money or thing of value * * * deposits * * * any communication containing any threat * * * to injure the person of the addressee or of another", shall be punished as therein provided. While the offense therein charged involved extortion, and defendant argues that the case accordingly is distinguishable, the language relating to threats is identical with that in the offense here charged. In that case the defendant admitted writing a letter to Maurice V. Frank, which read in part: " 'Okay Maurie, this is it, get it and get it straight because you have only one chance. We want $10,000.00 cash in 10's and 20's to be placed by you in a place designated by us in our next letter. * * * Please Maurie make it easy on yourself by cooperating fully.' " The defendant moved to dismiss on the ground that the letter failed to disclose any threat to injure the person of the addressee. The motion was denied and the Court of Appeals affirmed, saying: "We have found no guiding judicial interpretation of this statutory language, but we think it obvious that Congress intended thereby to penalize every extortion demand by mail which is coupled with any express threat or with any language or expression which carries with it the reasonable connotation of threat to injure the person of the addressee. Our decision, therefore, must depend on whether the essential significance of the language used by the defendant necessarily constituted a threat to injure the person of Frank; whether the actual meaning of the language, plus its necessary suggested implications, was such as reasonably to instill in him the actual apprehension of impending bodily harm. We would render the statute impotent and define the crime as one depending on the degree of ingenuity of each individual extortionist, if we were to require that the injury intended be precisely catalogued as to its physical nature or exact method of perpetration."

In United States v. Pennell, D.C.N.D. Cal.1956, 144 F.Supp. 317, 319, the defendant was charged with a violation of 18 U.S.C.A. § 875(c) which, with respect to interstate communications, prescribes the same offense here charged. The

pertinent portions of the letter written by defendant read: "'I have also had reports of your continued nefarious and immoral conduct * * * and I shall in the very near future be in Sacramento to deal with you and your cohorts. I dislike very much having to deal with you and your men in this manner—but there seems to be no other way * * * Believe me, Baby, this is serious now.'" In denying a motion to dismiss the indictment, the court said: "It is defendant's contention that the words 'to deal with' do not and cannot constitute a threat to injure the person of another. While it is true that these words taken alone, and out of context, may not constitute a threat, the test of whether words or phrases are harmless or threatening is the context in which they are used, measured by the common experience of the society in which they are used. (citing United States v. Prochaska, supra). Under a statute such as § 875 (c), there is an offense when the language or expression used carries a reasonable connotation of a threat to injure a person. (citing United States v. Prochaska, supra) * * * Looking at these words in the text, where they are alleged to have been used by the defendant, it cannot be said as a matter of law that there is no threat to injure the person of Mrs. Gloria Pennell. * * * Whether the language used by the defendant is, as the Government contends, a real and actual threat to injure the person of another, or whether it is, as the defendant contends, no threat at all, is a question of fact for the trier of the facts, and this question cannot be determined on this motion to dismiss."

In Bass v. United States, 6 Cir., 1957, 239 F.2d 711, 712 the defendant was charged with the offense of causing a threatening letter to be delivered through the mail in violation of 18 U.S.C.A. § 876. The letter stated in part: "Your brat is going to fail to show up some day and soon unless you drop this suit and apologize. If you don't, we will start our ball rolling." The defendant was convicted and the Court of Appeals reversed on other grounds. The court held, however, that the letter contained a threat to injure another and said further: "As to the claim that the government's proofs failed to show that the indictment letter did not disclose any intent on the part of the writer to injure the person named therein, such proof was unnecessary since proof of violation of the statute does not require evidence of intent to injure."

Motsinger v. State, 1890, 123 Ind. 498, 24 N.E. 342, 343, involved a prosecution under a state statute for blackmail. The defendant contended that the letter did not contain a threat, and that the court must look wholly to the letter itself, and could not go behind it to look for or ascertain its meaning. The court said: "The letter was ambiguous, and such ambiguity might be removed by proper averments and proof. * * * 'A letter, when ambiguous, may be explained by parol proof of extraneous facts, as well as by declarations of the writer. The prosecutor may be asked as to what appeared to him to be the meaning of the letter. The meaning is for the jury, if the terms be ambiguous, and is to be inferred from all the circumstances of the case.'" (Wharton, Criminal Law, 7th ed., vol. 2, § 1665).

The letters in question contain a reasonable connotation of some threat to injure the person of "Barb". While the nature of the threatened injury is not expressly stated in the letters, the language used, plus its necessary suggested implications, might reasonably instill in the addressee apprehension of impending injury to Barb.

Moreover, the letters refer expressly to a prior conversation with the addressee in which a more specific threat was made. It is my conclusion that the evidence of the addressee relative to this conversation with the defendant was properly admitted to explain the threat clearly implied in the two letters.

In my opinion, there was sufficient proof of identity of the defendant and probable cause to believe him guilty of the offense charged. The warrant of removal will issue.